## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| KELLY BUTLER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No. 2:19-cv-00091 |
| | ) | |
| v. | ) | Chief Judge Crenshaw |
| | ) | |
| SMITH COUNTY BOARD OF | ) | Magistrate Judge Newbern |
| EDUCATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## FINAL CONSENT DECREE AND ORDER

### INTRODUCTION

On November 18, 2019, Plaintiffs filed a Complaint asserting claims pursuant to 42 U.S.C. §1983 against the Smith County Board of Education (the "Board"); Barry H. Smith, in his official capacity as the Director of Schools of the Smith County School System; Dusty Whitaker, in his official capacity as the Principal of Smith County High School; and Kelly Bell, in her official capacity as the Principal of Smith County Middle School. Kelly Butler sued on his own behalf and on behalf of his minor children, H.B., and P.B. Sharona and Jason Carr sued on their own behalf and on behalf of their minor children, L.C. and D.C.

Complaint alleged that the Board has a custom, policy, and practice of violating the Establishment Clause by, among other actions, incorporating official prayer into school events; proselytizing students; and subjecting students to religious iconography via displays in classrooms, hallways, and other locations. In addition to their Complaint, Plaintiffs filed a motion for a preliminary injunction on November 19, 2019. The Defendants filed an Answer to Plaintiffs' Complaint on December 26, 2019, and in their Answer denied Plaintiff's legal allegations. On April 17, 2020, the Court entered a Consent Preliminary Injunction and Order, pending either (1)

a final settlement agreement regarding the full merits of this case, or (2) a final ruling on the merits of this case by this Court.

To ensure that the rights of Plaintiffs and all students, parents, and families are protected, as well as to avoid further costly and protracted dispute, the parties have agreed voluntarily to entry of this Consent Decree and Order in settlement of all claims in the Complaint.

1.    In their Answer, Defendants deny many of the factual allegations, but admit to various factual allegations asserted by Plaintiffs. The factual allegations admitted to by Defendants include but are not limited to:

- The delivery of prayer over the public-address system at school events, such as a Veteran's Day assembly, graduation ceremonies, and football games, accompanied by requests for attendees to bow their heads and pray (Defs.' Answer ¶¶ 31-33, 35, 41-42, 44);

- Some coaches' participation in prayer with students before and after sporting events (*id.* at ¶¶ 35, 37-38);

- The distribution of Bibles to fifth-grade students by members of The Gideons International (*id.* at ¶ 46-48);

- The display of a Bible in the school hallway (*id.* at ¶ 50), a Bible in the library (*id.* at ¶ 51), and Bibles in a teacher's classroom (*id.* at ¶ 52);

- The display of a mural, which Defendants claim was painted by students, depicting a Latin cross alongside the words "In God We Trust" in the weight-training room and indoor athletic facility (*id.* at ¶ 54);

- The display of signs containing Bible verses and religious messages posted in school hallways (*id.* at ¶¶ 58-9);

- A teacher's daily reading of Bible verses to students at the beginning of class, which "has continued…this year." (*id.* at ¶ 65-6); and

- A teacher's distribution of notes featuring a biblical quotation to all graduating middle-school students (*id.* at ¶ 63).

2.     Some of these practices and customs and others alleged in the Complaint (a) endorse and promote religion, (b) have the purpose or effect of advancing religion, and/or (c) coerce religious exercise either directly or indirectly, in violation of the Establishment Clause of the First Amendment.

3.     Accordingly, the Clerk shall enter judgment in favor of the Plaintiffs. In adopting this Consent Decree, the Court has ensured that it comports with the First Amendment to the U.S. Constitution.

## Definitions

4.     The following definitions **SHALL** apply to this Order. In construing these definitions, the singular shall include the plural and the plural shall include the singular:

(a)     "Prayer" means a communication (written or audible) with a deity, including, but not limited to, a benediction, an invocation, the Lord's Prayer, or otherwise calling upon a deity to offer guidance, assistance, or a blessing. Accordingly, "Prayer" does not include customary, polite expressions and greetings, including "God Bless You" or "Thank Heavens," or a student's religious expression responsive to a legitimate academic class assignment. "Prayer" also does not include a moment of silence, provided that School Officials do not direct, encourage, or imply that students should use the moment of silence for Prayer.

(b)     "Religious Service" means a convocation for a religious purpose, including, but not limited to, baccalaureates, religious youth group meetings or events, worship services, Bible study, and religious rallies, festivals, and concerts.

(c)     "Religious Title" means Benediction, Invocation, Prayer, Blessing, Inspirational Message, Sermon, Devotional Pledge, Bible Reading, Devotion or any other title that in any way relates to Prayer.

(d)     "School District" means Smith County Schools and all Defendants.

(e)     "School Event" means any activity or happening (1) at a School Board facility or (2) sponsored, planned, conducted, or supervised by a School Official acting in his or her Official Capacity. It includes, but is not limited to, graduation or grade-promotion ceremonies; awards programs or induction ceremonies; assemblies or other school-day programs; athletic practices and

competitions; rehearsals and performances; class instructional times; and Club meetings or events. However, each of the following excepted activities is not a School Event:

(i)     A student religious Club meeting or event, if all School Board employees and agents are present at the meeting or event only in a "nonparticipatory capacity," as used in the Equal Access Act;

(ii)     An activity at a School Board facility, if (I) it is outside the presence of School District students and (II) no School Official acts in his or her Official Capacity; and

(iii)     An activity at a School Board facility that is used by a third party pursuant to the School Board's Community Use of School Facilities Policy, Descriptor Code: 3.206, Issued Date: 01/20/11, which governs the use of School Board facilities, so long as (I) the terms of usage (including rent) are consistent with the terms applicable to other third-party users, (II) the use does not involve any School Official acting in his or her Official Capacity, and (III) the use does not take place during school hours. This exception does not apply and an activity will be deemed a School Event if the activity takes place (A) during instructional time, (B) when the majority of school employees assigned to the subject school facility are contractually obligated to be present, or (C) during the transitional period before or after school when students are embarking or disembarking from school buses or private transportation. School Officials may supervise students between instructional time and the third-party use period if the supervision is neutral with respect to religion.

(f)     "School Official" means the Board and its officers, agents, affiliates, subsidiaries, servants, employees, successors, and all other persons or entities in active concert or privity or participation with them, but only to the extent such a person acts in his or her Official Capacity or is in active concert or privity or participation with the Board. Outside organizations that receive no support from the Board, do not receive remuneration of any kind from the Board, are not controlled by the Board, and are not given preferential treatment or access (e.g., to sell wares) by the Board are not School Officials when they satisfy these requirements.

(g)     "Official Capacity": This Consent Decree regulates only "official capacity" conduct by District employees. *It does not address the conduct of school employees in any context other than their official capacity.* A person acts in his or her "Official Capacity" when (1) performing official duties or furthering the work of the District or School Board or (2) acting under or with a power or authority granted by virtue of employment by or association with the District or School Board. However, where the only power or authority the School Official exercises is the authority to be present at a Distric t School Board facility and the School

Official is not interacting with or in the presence of a student, then the School Official is not in his or her Official Capacity by virtue of subsection (g)(2).

## Equal Access Act

5.      No provision in this Order is intended to supplant or alter the rights afforded student clubs by the Equal Access Act.  School Officials shall comply with the Equal Access Act.  20 U.S.C. §4071 et seq.

## Permanent Injunction

6.      *Prayer at School Events*.  School Officials are enjoined from promoting, advancing, endorsing, participating in, or causing Prayers during or in conjunction with School Events for any school within the School District:

(a)      School Officials shall neither offer nor participate in a Prayer during or in conjunction with a School Event. A School Official's remaining still and silent as a sign of respect during a Prayer shall not, alone, constitute offering or participation in a Prayer.

(b)      School Officials shall prohibit non-student third parties (including, but not limited to, clergy or other religious leaders) during or in conjunction with a School Event from offering a Prayer addressed to an audience as part of the event or program, soliciting a Prayer from anyone as part of the event or program, or promoting a religious belief to anyone as part of the event or program.

(c)      School Officials shall not include Prayer, whether or not it is noted in a printed program, during or in conjunction with a School Event. School Officials shall not authorize a group of students, a student body (e.g., through an election), or third parties to include Prayer, whether or not it is noted in a printed program, during or in conjunction with a School Event.

(d)      School Officials shall not encourage, solicit, or invite any person, either implicitly or explicitly, to deliver or offer a Prayer during or in conjunction with a School Event. School Officials shall not set aside a time for Prayer during or in conjunction with a School Event. However, this provision does not bar School Officials from including a moment of silence in School Events, provided that School Officials do not direct, encourage, or imply that students or others should use the moment of silence for Prayer.

(e)      School Officials shall prohibit any segment of a School Event from having a Religious Title. School Officials shall not give any segment of a School Event a Religious Title.

5

School Officials shall not permit students, student groups, or third parties to give a segment of a School Event a Religious Title.

(f)     If School Officials select students to make an address during or in conjunction with a School Event, they shall do so by a selection process that is neutral to religion. With respect to any student selected to make an address during or in conjunction with a School Event, School Officials shall document in writing the criteria and process used to select the student, as well as all instructions or directives provided to the student regarding the address. School officials shall further state, in writing, whether any School Official shaped, reviewed, or edited for content, substance, message, style, or theme, the address given.

(g)     To the extent that School Officials permit a student during or in conjunction with School Events to give an address that a School Official shapes, reviews, or edits for content, substance, message, style, or theme, then School Officials shall ensure the student's address excludes Prayer. Nothing in this provision shall relieve School Officials of their obligation to prohibit or curb efforts by third parties to introduce Prayer during a School Event or otherwise comply with Section 5 of this Order.

(h)     The Board shall amend its "Prayer and Period of Silence" policy, descriptor code 4.805, Version Date: Dec. 18, 2018, to remove the reference to prayer in the caption.

7.     *Religious Services.* School Officials are enjoined from planning, organizing, financing, promoting, or otherwise sponsoring in whole or in part a Religious Service:

(a)     School Officials in their Official Capacity shall not attend or be tasked with official responsibilities at any Religious Service, except serving as the faculty advisor to supervise a Club meeting or event. School Officials shall not monitor behavior of students or require them to conform to any standards at any Religious Service, except to supervise a Club meeting or event. School Officials shall not plan or organize any Religious Service on school time or do so by using School District equipment or supplies.

(b)     School Officials, during or in conjunction with a School Event, shall not require or encourage students to attend any Religious Service, including church services and student religious Club meetings. School bands, choirs, and military guards shall not perform as part of a Religious Service, including church services. Provided however, that individual students, in their personal capacities, may not be prohibited from such performance.

8.     *Promotion of Religious Beliefs.* Defendants are enjoined from permitting School Officials at any school within the School District to promote their personal religious beliefs to students in class or during or in conjunction with a School Event.

(a)     School Officials shall not participate in any way in a Prayer with students during or in conjunction with instructional periods or a School Event. During or in conjunction with a School Event, School Officials shall not offer a Prayer, recite a Prayer alongside or with students, bow their heads or otherwise posture in a manner that is likely to be perceived as an endorsement of the Prayer, or kneel or join hands with students. A School Official's remaining still and silent, as a sign of respect, during a Prayer shall not, alone, constitute an endorsement.

(b)     School Officials shall be present at meetings or events of student religious Clubs only in a non-participatory capacity. School Officials shall not lecture, proselytize, pray, or preach at meetings or events of student religious Clubs. A School Official's remaining still and silent, as a sign of respect, during a Prayer shall not, alone, constitute a violation of this provision.

(c)     School Officials shall not cite to, read or assign readings from the Bible, a sacred text or a sermon absent a legitimate non-religious, educational objective.

(d)     School Officials, during or in conjunction with a School Event, shall not solicit, discourage, or encourage students to engage in religious activity or attend a Religious Service. School Officials, during or in conjunction with a School Event, shall not permit non-student third parties to solicit, discourage, or encourage students to engage in religious activity or attend any Religious Service.

(e)     School Officials shall not orally express personal religious beliefs or affiliations to students during or in conjunction with instructional time or a School Event. School Officials shall not express personal religious beliefs or affiliations to students through written or symbolic means (whether placed on a classroom or hallway wall, erected on a classroom floor, or otherwise attached or placed on the District's tangible property, or included on any website or webpage established or set up by school staff for use by students or a class.

(f)     School officials shall not authorize students to post religious iconography or religious messages in classrooms, hallways, or other school facilities. School officials shall remove any such existing displays. However, this provision is not intended to impede a student's free exercise of religion.

(g)     However, jewelry on the School Official's person or clothing or religious articles worn by the School Official (e.g. a yarmulke and a cross necklace) are permissible. Nothing herein shall prohibit a teacher from using religious symbols, articles, or books for a non-religious educational reason or from temporarily displaying or recognizing student assignments that include religious content, provided that the display or recognition is based on religiously neutral and academic criteria.

9.      *Distribution of Materials in the Schools.*  Private, non-school sponsored materials may be made available to students as part of a neutral limited or other public forum that may be used by outside groups to distribute materials.  In addition to compliance with Board policy "Advertising and Distribution of Materials in the Schools," Descriptor Code: 1.806, Issued Date: 12/20/05, the distribution of any such materials must be in compliance with the following provisions:

(a)     Charity, civic, or other non-profit, non-political organizations may make available materials for pickup by students at one location designated by School Officials in each District school.  The designated location shall be easily accessible to students but shall not be in a location where groups of students formally gather for a particular purpose (e.g., the cafeteria or playground).  Under no circumstances may the designated location be a classroom.

(b)     To avoid coercion, proselytizing, or the appearance of endorsement, under no circumstances may individuals or representatives of non-school agencies or organizations interact personally with students as part of any distribution at the designated location.

(c)     School Officials shall refrain from specially promoting or announcing, to the exclusion of all other materials, the availability of an individual private organization's materials.

(d)     School officials shall require clear disclaimers of school endorsement to be posted at the designated location.

(e)     This section shall not be deemed to limit or restrict the freedom of students, acting on their own, to distribute religious literature to a fellow student when conducted in a materially non-disruptive manner.

(f)     Nothing herein prohibits School Officials from establishing a neutral limited or other public forum, like a "flyer system," for the limited purpose of allowing charity, civic, or other non-profit, non-political organizations to announce – as through flyers sent home to parents – events and activities sponsored by those organizations.

(g)     Nothing herein prohibits School Officials from authorizing the distribution of non-religious materials in connection with a curricular or educational program presented or conducted in conjunction with a School Event (e.g., drug and alcohol education assemblies).

10.    *Retaliation.* School Officials are enjoined from taking retaliatory action against Plaintiffs or any member of their family for bringing this lawsuit or otherwise objecting to unconstitutional practices.

## Enforcement

11.    The Board shall provide a copy of this Order to all current School Officials throughout the School District.  The Board shall provide a copy of this Order to all persons who later become School Officials for as long as this Order remains in effect. This Order shall be disseminated in the same manner as School Board Policies and Procedures and shall be maintained in any electronic or paper policy manual. This Order shall be included in the District's "Code of Student Conduct" or substantially equivalent publication.

12.    The Board shall establish and maintain a process for the investigation of complaints regarding School Officials' promotion of religion.  School officials shall not prohibit or discourage any complainant from contacting the ACLU of Tennessee or the ACLU Program on Freedom of Religion and Belief to report potential violations of the Consent Decree.

13.    *Notice Period.*  The Board shall have a period of 30 days from the date of entry of this Order to notify School Officials of this Consent Decree and Order and inform them of their obligations thereunder. After the 30-day educational period expires, School Officials who violate this Order may be subject to contempt proceedings or other judicial relief.

14.    *Faculty Training and Education.* Before the 2020-2021 school year commences, the Board shall provide mandatory trainings to all certified or professional Board employees on the subjects of the Board's legal obligations under the Order. The mandatory trainings initially shall be provided to all certified or professional Board employees, and thereafter, to all certified or professional newly hired employees. These mandatory trainings shall also educate Board

9

employees on the psychological and developmental impact of religious discrimination on students. Prior to providing the initial trainings, the attorney and other experts providing them shall consult with the ACLU of Tennessee and the ACLU regarding the content and nature of the proposed trainings.

15.     This Order is designed to ensure that the School District's practices and policies do not violate the First Amendment rights of students in the School District.  To that end, on Plaintiffs' counsel's request, counsel for the School District shall provide documentation and information available to Defendants so that Plaintiffs' counsel may ensure School Officials' compliance with this Order and evaluate, in context, the Board's guidance and interpretation of this Order and its enforcement efforts with respect to this Order.

16.     The parties to this Order shall endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Order before bringing such matters to the Court for resolution. However, in the event that the Board either fails to perform in a timely manner any act required by this Order or act in violation of any provision of this Order, each Plaintiff or any affected student—present or future—who alleges a violation may contact the Plaintiffs' counsel. As may be appropriate, counsel may then move the Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance or non-performance of certain acts.

17.     This Court retains jurisdiction of this case to enforce the terms of this Order.

**Additional Relief**

18.     *Nominal Damages.*   In connection with the Judgment entered in favor of the Plaintiffs and against the Board, the Board shall pay Plaintiffs Kelly Butler, Sharona Carr, Jason, Carr, H.B., P.B., L.C., and D.C. nominal damages in the amount of $1.00 each. These nominal

payments recognize the injury caused to Plaintiffs by the Board's custom and practice of promoting religion.

19.    *Attorneys' Fees, Costs, and Litigation Expenses*.   Pursuant to (a) 42 U.S.C. §1988, (b) and Federal Rule of Civil Procedure 54, this Court concludes that the Plaintiffs are the prevailing parties on all claims filed in this matter.   Accordingly, the Court concludes that the Board is liable for the Plaintiffs' reasonable attorneys' fees, costs, and litigation expenses in accordance with applicable law.   The parties shall attempt to reach an agreement regarding the amount of attorneys' fees, costs, and expenses due to Plaintiffs. If they are unable to do so, Plaintiffs may file a motion for attorneys' fees, costs, and expenses.

20.    Nothing in this Order will be construed to limit any party's right to enforce this Order according to its terms. If any court of competent jurisdiction determines that any provision contained in this Order, or any part thereof, cannot be enforced, the parties agree that such determination shall not affect or invalidate the remainder of the Order.

21.    This Order shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, successors, and assigns.


IT IS SO ORDERED.


_____
Waverly D. Crenshaw, Jr.
Chief United States District Judge

By their signatures on this and the following pages, the undersigned parties agree to, and request the entry of, this Order:

_____
KELLY BUTLER, PLAINTIFF

_____
SHARONA CARR, PLAINTIFF

_____
JASON CARR, PLAINTIFF

_____
SMITH COUNTY BOARD OF EDUCATION, DEFENDANT

By (print name): Barry H Smith

54385915.v1